IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| DWIGHT McDONALD, CHRISTOPHER ATKINS and TIMOTHY PROVOST, Each Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs <br> vs. <br><br> M2 MANAGEMENT INC., and MICHAEL P. TRAINOR, <br><br> Defendants | No. 21-cv-6260 |

### DEFENDANTS' RULE 60(b)(4) MOTION TO VACATE JUDGMENT

### INTRODUCTION

On August 1, 2024 Mike Trainor, president of M2 Management Inc. received a notice in the mail that a judgment from the Northern District of Illinois entered on September 29, 2022 was being domesticated against both himself and his company in New Hampshire. This letter, in August of 2024, was the first that Trainor had learned that there was a lawsuit filed against him in the Northern District of Illinois, that he and his company were found in default, or that there was any judgment entered against them. That is because the means of service used against defendants was ineffective and did not give them actual notice of the lawsuit pending against them in a different state.

The purported method of service on defendants was service via publication through a local free morning daily newspaper whose circulation did not include the town where M2 is physically located. As discussed in more detail below, this attempt at service was improper and did not sufficiently inform the defendants that there was a lawsuit pending against them in the Northern District of Illinois. Moreover, Plaintiffs had other means of attempting service on defendants that

1

would have resulted in actual Notice being given to defendants as such, defendants respectfully request that this court vacate the September 29, 2022 judgment entered against them pursuant to federal rule of Civil Procedure 60(b)(4).

## BACKGROUND AND PROCEDURAL HISTORY

This matter was initiated on November 22, 2021, when Plaintiffs Dwight McDonald, Christopher Atkins, and Timothy Provost (collectively, "Plaintiffs"), filed suit individually and collectively under the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA"). The Complaint named M2 Management, Inc. ("M2") and Michael P. Trainor ("Trainor")(collectively, "Defendants") as Defendants and sought relief on behalf of the named Plaintiffs and others similarly situated. *ECF No. 1*.

While Plaintiffs issued a summons to Defendants on November 22, 2021, Plaintiffs took no action to serve Defendants for more than two months after filing the Complaint. As a result, the Court struck the initial status hearing set for January 31, 2022 and reminded Plaintiffs of their obligations under Rule 4(m). *ECF Nos. 4, 6*. By February 21, 2022, nearly three months post-filing, Plaintiffs had not achieved service on Defendants and filed a motion for an extension of time to serve Defendants. *ECF No. 7*. In the four months leading up to Plaintiffs' first motion for extension, Plaintiff had only issued one set of summonses the day they filed the Complaint. *ECF Entry for 11/22/21* (No ECF Docket No. assigned). Plaintiffs' first request for an extension sought a 90-day extension to serve Defendants while generally asserting that their initial process server's efforts were unsuccessful and their new process server was in the process of investigating Defendants for a new service address. *Id*. The Motion was not supported by affidavit or any other means. *Id.* While the Court granted the motion in part, granting Plaintiffs until April 5, 2022 to

serve Defendants, it expressed concern about the pace of litigation, stating on the record that "it should not take 90 additional days" to locate and serve Defendants. *ECF No. 8*.

Despite the Court granting Plaintiffs more time to serve Defendants, Plaintiffs filed a second motion for extension of time on the date they were supposed to serve Defendants; April 5, 2022. *ECF No. 9*. Although Plaintiffs alleged that they made multiple unsuccessful service attempts at Trainor's registered office address, a residential address in Manchester, New Hampshire, a residential address in Astoria, New York, and via certified mail to a P.O. Box address, Plaintiffs insisted that service was not possible through these means. As discussed below, Defendants do not maintain an address in Manchester, New Hampshire or Astoria, New York. Plaintiffs further asserted that they made numerous unsuccessful attempts to personally serve Trainor. However, Plaintiffs failed to file, at the very least, affidavits of non-service, demonstrate that skip traces were performed, or specify when their alleged service attempts were made. Further, despite stating that their attempts to serve Defendants at the registered office's principal address, Plaintiffs sought leave to effectuate service to Defendants via certified mail to the corporate defendant's principal office. *ECF No. 9*. The Court granted Plaintiffs leave to serve Defendants to May 6, 2022. *ECF No. 10*.

Yet again, instead of effectuating service, Plaintiffs filed a **third** motion for an extension of time on May 6, 2022, requesting leave to serve Defendants by publication in a local New Hampshire newspaper. *ECF No. 12*. Taking Plaintiffs' statements of the difficulty of locating Defendants as true, the Court granted Plaintiffs' third motion and authorized service by publication on May 9, 2022 and directed Plaintiffs to publish notice once per week for three consecutive weeks. *ECF No. 13*. Plaintiffs filed proof of publication on June 20, 2022, including notices dated May 13, May 20, and May 27, 2022, along with an affidavit of publication. *ECF No. 14*. After allegedly

3

achieving service by publication, Plaintiffs moved for entry of default on July 25, 2022. *ECF No. 16*. The Court granted that motion on August 4, 2022, entering default under Rule 55(a) against both Defendants and directing Plaintiffs to file a motion for default judgment under Rule 55(b) by September 7, 2022. *ECF No. 17*. Instead of filing a Rule 55(b) Motion, Plaintiffs filed yet another motion for an extension of time, this time to submit their default judgment motion. *ECF No. 20*. The Court granted such an extension up to September 21, 2022, at which point Plaintiff finally filed their motion. *ECF Nos. 21-22*. On September 29, 2022—more than ten months after the complaint was filed—the Court entered default judgment against both Defendants and terminated the case. *ECF No. 25*.

Defendants now move to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(4), on the grounds that Defendants were not reasonably calculated to receive service by publication through the Laconia Daily Sun and did not receive *actual* notice of this lawsuit until August 2024, nearly two years after judgment had been entered against them. Michael Trainor Affidavit ("Trainor Aff."), ¶¶43-44, attached herein as Exhibit A. First, at the time of publication, Trainor nor M2 subscribed to or received delivery of the Laconia Daily Sun, the newspaper Plaintiffs used to attempt service. *Id.* at ¶¶48-49. Although he had occasionally seen the paper at New Hampshire gas stations, he did not personally read it. *Id.* at ¶¶45-47, 50. Additionally, Trainor had moved from Gilford to Moultonborough in May 2021—roughly 30 miles away—and M2's principal address is located in Thornton, approximately 50 miles from Gilford. *Id.* at ¶¶16, 52-54. According to the newspaper's website, it does not circulate in Thornton. *Id.* at 51, 55. At the time the publication notices were issued—May 13, 20, and 27, 2022—Trainor was also not in New Hampshire, but conducting business in Pennsylvania and Illinois. *Id.* at ¶56.

4

Trainor first received actual notice of the lawsuit only after a judgment was entered. Trainor received a letter in the mail from the State Court of New Hampshire on August 1, 2024 informing him that Plaintiffs were attempting to domesticate the September 29, 2022 judgment in New Hampshire. *Id.* at ¶44. This letter was received at Trainor's P.O. box listed on the New Hampshire Secretary of State website, a P.O. box he maintained in Gilford, Illinois since forming M2 in 2015. *Id.* at ¶¶5, 20-22. Trainor is the only person with access to this P.O. box and has regularly checked and collected mail, including certified mail, from this address for years without any issues with lost mail or packages. *Id.* at ¶ 23-24. In the past, if Trainor was required to collect an item from the post office that was not left directly in his P.O. box, Trainor would receive a note from the post office requesting he pick up the mail from post office personnel. *Id.* at ¶25.

In addition to regularly checking the mail, Trainor's practice was to determine the nature and time-sensitive nature of the correspondence, prior to taking this mail to M2's office in Thorton, New Hampshire, where he would handle the matter himself. *Id.* at ¶¶33-35. In particular, if M2 received legal correspondence or documents to its P.O. box, Trainor's practice was to make a copy of the correspondence and determine whether M2 required legal counsel for the matter. *Id.* at ¶36. If legal counsel was required, Trainor would provide all relevant information to M2's retained attorneys. *Id.* at ¶37. If M2 determined that legal counsel was not required, Trainor would personally handle the return correspondence himself. *Id.* at ¶38. Trainor did not receive any written notice at his P.O. box related to any mailing for this case until August 1, 2024. *Id.* at ¶¶41-44. Prior to that date, Trainor did not receive any written notice about a lawsuit pending in the Northern District of Illinois to his P.O. box. *Id.* at ¶44. Despite M2 also receiving mail at its principal office's Thorton address, Trainor also did not receive any written notice regarding a lawsuit in the Northern District of Illinois there. *Id.* at ¶¶39, 41.

5

Had M2 received any legal documents, summons, or notice related to the lawsuit at the Thorton address, Trainor would have been notified upon reviewing the mail and M2 would have responded, as was its custom and practice. *Id.* at ¶40. As Trainor did not receive any written notice to either available address for M2 prior to August 1, 2024, the principles of fair notice and Defendants' right to have an opportunity to be heard demand that the judgement against Defendants be vacated.

## LEGAL STANDARD

Rule 60(b) provides for relief from a final judgment or order because of mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud. *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 364 n.1 (7th Cir. 1983). Specifically, Federal Rule of Civil Procedure 60(b)(4) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: ... (4) the judgment is void." Fed. R. Civ. P. 60 (b)(4). A Rule 60(b)(4) motion to vacate a void judgment can be made at any time and need not show good cause. *In re Outboard Marine Corp.*, 369 B.R. 353, 360 (Bankr. N.D. Ill. 2007). Rule 60(b)'s requirement that a show good cause for the default, a meritorious defense to the plaintiff's complaint, and quick action to correct the default are not required when moving to vacate a default judgment under Rule 60(b)(4). *Id.*

If a court finds a judgment void, the court must vacate the judgment under Rule 60(b)(4). This is not discretionary. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir.1986); *United States v. Indoor Cultivation Equip. From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir., 1995), overruled on other grounds by *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394–95 (1993). The party moving to vacate a default judgment under Rule 60(b)(4) has the burden of proving a judgment is void for lack of service. *Bally Export Corp.*,

804 F.2d at 401; *Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 n. 2 (7th Cir. 1991).

## ARGUMENT

I. **The September 29, 2022 Judgment Against Defendants is Void for Lack of Proper Service.**

A judgment is void if the court lacked subject matter jurisdiction or personal jurisdiction. *O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.,* 201 F.3d 948, 951–53 (7th Cir.2000). A court lacks personal jurisdiction over a defendant if he was not properly served. *Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.,* 126 F.R.D. 48, 51 (N.D.Ill.1989). As a result, a default judgment obtained after improper service is void. *Id.* Any judgment made without proper jurisdiction is a "legal nullity" that may be vacated by the rendering court at any time. *Pacurar v. Hernly,* 611 F.2d 179, 181 (7th Cir.1979).

Federal Rule of Civil Procedure 4(e)(1) allows for service consistent with the state law for service in the state where the district court is located or where service is made. Fed. R. Civ. P. 4. In this case, Plaintiffs petitioned the Court to attempt service following state law of the state where service was to be made, New Hampshire. *ECF No. 12.* The New Hampshire Supreme Court has held that "[a]n elementary and fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Sununu v. Clamshell All*., 122 N.H. 668, 672 (1982). Indeed, the purpose of notifying a defendant of the pendency of litigation is to precisely advise him of the nature of the claim, the identity of his adversary, the return date of the proceedings, what he must accomplish to protect his rights, and the consequences of his failure to do so. *Id.* The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting the rights or interests of nonresident

7

defendants. *Shaffer v. Heitner,* 433 U.S. 186, 198–200 (1977). It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945). Under New Hampshire law, fair notice and an opportunity to be heard are the primary tests for valid service upon a defendant. *Williams v. Williams*, 121 N.H. 728, 733 (1981). As argued below, Defendants, a New Hampshire resident and corporation, did not have either fair notice or an opportunity to be heard prior to a judgment being entered against them in the Northern District of Illinois.

> **A. Defendants did not receive actual, valid notice of the lawsuit through service by publication.**

Because valid service of process is necessary in order for the court to assert personal jurisdiction over a defendant, a default judgment entered against an improperly served defendant is void. *Fed. Equip. Corp. v. Puma Indus. Co., Ltd.*, 182 F.R.D. 565, 657 (N.D. Ill. 1998). Here, Plaintiff's alleged valid service was through service by publication. There is no provision in the Federal Rules of Civil Procedure authorizing service of the summons by publication. As such, an individual seeking to serve a defendant by publication of the summons must look to the provisions in Rule 4(e)(1) allowing for service of process to be effectuated under state law in order to do so. Fed. R. Civ. P. 4(e)(1).

Courts in New Hampshire, where service by publication was attempted, only permit service by publication in a newspaper when it is ordered by a court. Such notice must comply with the precise requirements of RSA 510:9. Such requirements include that the original must be filed in the court, it must contain a citation containing the title of the case, the name of the court in which it is pending, the time and place of the return and hearing, and the fact that the original is on file and may be examined by interested parties. *Sununu v. Clamshell All.*, 122 N.H. 668, 672, 448 A.2d

8

431, 434 (1982). Strict compliance with the statutory requirements for service of process is required to provide the defendant with constitutionally sufficient notice of the action, and to vest the trial court with jurisdiction over the defendant[1]. *Nault v. Tirado*, 155 N.H. 449, 451 (2007).

Moreover, even if statutory requirements are facially satisfied, the primary test for valid service upon a defendant is fair notice and an opportunity to be heard. *Williams v. Williams*, 121 N.H. 728, 733 (1981). This is an elementary and fundamental requirement of due process in any proceeding, where under all the circumstances, service is reasonably calculated to apprise the interested parties of the pendency of the action and afforded an opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Here, Defendants neither were apprised of the lawsuit nor had an opportunity to be heard on the matter, thus violating his due process rights.

Plaintiffs allegedly effectuated service on Defendants through the Laconia Daily Sun, a newspaper whose circulation "includes Gilford, New Hampshire" where Plaintiff alleged that M2's principal office address and Trainor's registered address are located. *ECF No.12*, ¶20. However, at the time of publication, Trainor did not live in Gilford, New Hampshire. Trainor Aff., ¶52. In fact, he lived thirty (30) miles away from Gilford in Moultonborough, New Hampshire. *Id.* at ¶53. While the Laconia Daily Sun appears to deliver to Moultonborough, Trainor did not subscribe to said newspaper nor did he have it delivered to M2's business address in Thorton, where M2's principal address is and was located at the time. *Id.* at ¶¶8, 48-51. Further, even if the publication was circulated to a town where Trainor would have been reasonably expected to

---

[1] Had Plaintiffs attempted service by publication according to Illinois requirements for publication by service as set forth in Section 2-206(a) of the Illinois Code of Civil Procedure, they would have failed to strictly comply for failure to file an affidavit showing that upon due inquiry and due diligence, defendants' location could not be ascertained. *See* 735 ILCS 5/2-206(a); *see also TCF National Bank*, 2016 IL App (1st) 152083, ¶ 28.

receive adequate notice, he was not in New Hampshire during the time service by publication was attempted. Trainor was in Illinois and Pennsylvania conducting business at the time. *Id.* at ¶56. Accordingly, because Trainor was not present at the time notice was circulated and the Laconia Daily Sun did not circulate to M2's Thorton address, Defendants were not apprised of the lawsuit and consequently, not afforded an opportunity to be heard.

    **B. Plaintiffs demonstrated lack of due diligence and due inquiry requires the default judgment against Defendants be reversed.**

While the plaintiff's diligence is not a formal factor considered when ruling on a Rule 60(b)(4) Motion, the Plaintiffs' lack of diligence in this matter further illustrates the lack of proper service on the Defendants. In this case, Plaintiffs chose to avail themselves of New Hampshire law to attempt service via publication. As such, New Hampshire law is instructive on this point. The New Hampshire Supreme Court has held that less reliable forms of constructive notice, such as publication or posting, are not reasonable where "an inexpensive and efficient mechanism such as mail service is available." *White v. Lee*, 124 N.H. 69, 75 (1983). Here additional methods of service more apt at providing actual notice to the defendant were available prior to attempting service by publication.

New Hampshire Revised Statute §510:14 allows for service on a corporation, such as M2, "upon the clerk, treasurer, cashier, or one of the directors, trustees or managers, if any, in the state, and otherwise upon any principal member or stockholder, or upon any agent, overseer or other person having the care of any of the property or charge of any of the business of the corporation." N.H. Rev. Stat. Ann. §510:14. New Hampshire Revised Statute §510:2 states that the manner of service on a defendant generally requires that the party be served by "giving to the defendant or leaving at his abode an attested copy thereof, except in cases otherwise provided for." N.H. Rev.

Stat. Ann. §510:2. Here, Plaintiffs did not meaningfully attempt personal service or service via certified mailing before rushing to a less effective means of service via publication.

### i. Plaintiffs did not diligently serve Defendants.

Plaintiff filed their Complaint on November 22, 2021. *ECF No. 1*. Plaintiffs report that their initial deadline to complete service was set as February 22, 2022—four months after the filing of their Complaint. *ECF No. 12*, ¶3. Over the next several months, Plaintiffs extended the deadline to serve Defendants three times and were given a deadline to serve Defendants by July 1, 2022. *ECF Nos. 7, 9, 12, and 13.* During this eight-month period, Plaintiffs report service attempts on Defendants although the actual number of attempts appears to be unknown from a review of the Court's docket. Plaintiff's First, Second, and Third Motion for Extension of Time to Serve Defendants are silent as to the exact number of attempts beyond noting that service via mail was attempted three times to the same P.O. box in Gilford, NH. *ECF No. 12*, ¶¶11-12. Similarly, Plaintiff's Status Reports on service fail to provide additional specifics on the manner of service made prior to attempting service via publication. *ECF Nos. 5 and 14.* Moreover, the affidavit submitted in support of Plaintiffs' attorney's fees and costs only identifies four different payments for service attempts. *ECF No. 22-5, p. 24.* Thus, it is unclear the precise number or nature of the attempts made to serve M2 or the facts and circumstances surroundings Plaintiffs' service attempts prior to seeking service via publication.

This Court itself expressed frustration with Plaintiffs' attempts at service and noted as early as February 23, 2022 that "[i]t should not take 90 additional days for Plaintiffs to find Defendants and effectuate service." *ECF No. 8*. The Court's frustration was warranted because Defendants' locations were readily discoverable. Indeed, the New Hampshire Secretary of State lists M2's principal office address as 53 Diamond Ledge Rd, Thorton, NH. Ex. A, at ¶¶8-11. The Secretary

11

of State website even lists Trainor's business email address. *Id.* at Exhibit A to Affidavit. Despite public availability of this information, Plaintiffs did not avail themselves of these options.

Indeed, no attempts were made to contact Trainor or M2 via the email publicly listed on the New Hampshire Secretary of State website. *Id.* at ¶41. Nor did Plaintiffs attempt to serve M2, or Trainor, at the property listed for M2's principal place of business in Thorton, NH. *Id.* Had Plaintiffs attempted service at the Thorton address, Trainor would have been notified of the pending suit. *Id.* at ¶42. Such attempts, however, were not made. Instead, Plaintiffs attempted personal service and multiple attempts to serve Defendants at a P.O. Box listed in Gilford, NH while other means of service apparently went unexplored. As such, Plaintiffs did not act with diligence in attempting to serve Defendants by a more reasonable means of service prior to seeking service via publication.

### ii. Service by publication was not a reasonable means of serving M2.

Service via publication was improper as it did not provide the Defendants with either actual or constructive notice of the claims pending against them in the Norther District of Illinois. The publication used by Plaintiffs was not in the same town as M2's principal place of business in Thorton, NH. Ex. A at ¶¶51, 54-55. Instead, Plaintiffs opted for a publication that circulates in Gilford, NH nearly 50 miles away from where M2's principal office is located and listed on the NH Secretary of State's website. *Id.* at ¶¶8-9, 54. Moreover, §510:14 of the New Hampshire Revised Annotated Statutes allows for service on a corporation, such as M2, upon a number of persons within the company such as the clerk, treasurer, cashier, or one of the directors, trustees or managers and further provides additional avenues for service on a corporation through any principal member or stockholder, or upon any agent, overseer or other person having the care of any of the property or charge of any of the business of the corporation. N.H. Rev. Stat. Ann.

§510:14. Despite Plaintiffs' claims that they attempted personal service on M2, Trainor did not receive a copy of the summonses at the Thorton address. Ex. A at ¶41. M2 does not subscribe to the Laconia Daily Sun or receive a copy of the newspaper at its office. *Id.* at ¶¶48-49. As such, M2 did not have actual notice of the lawsuit in the Northern District and Plaintiffs attempts to serve M2 via publication was insufficient as the newspaper Plaintiffs used did not circulate in the same town as M2's principal place of business. Therefore, service on M2 was improper.

### iii. Service by publication was not a reasonable means of serving Trainor.

Similarly, Plaintiffs failed to exercise more reasonable options for service against Trainor individually. New Hampshire Revised Statute §510:2 states that the manner of service on a defendant generally requires that the party be served by "giving to the defendant or leaving at his abode an attested copy thereof, except in cases otherwise provided for." N.H. Rev. Stat. Ann. §510:2. As argued in section B(i) above, Plaintiffs failed to make meaningful attempts for service by more effective methods prior to pursuing service via publication against Trainor individually as well.

Plaintiffs' attempts at publication service were also improper as to Trainor. Publication in Gilford was approximately 30 miles from where Trainor lived from May 13-27, 2022. *Id.* at ¶¶52-53. Trainor does not subscribe to the Laconia Daily Sun or receive a copy of the newspaper at his home address. *Id.* at ¶48. Trainor previously resided at 1039 Cherry Valley Rd, Gilford NH 03249 the address listed for M2's registered agent (Trainor)[2]. *Id.* at ¶14. Trainor moved out of this property to a property in Moultonborough, NH in May 2021. *Id.* at ¶¶15-16. Plaintiffs' service attempts are further frustrated by the fact that Trainor was out of the state during the three-week period where

---

[2] While M2's Annual Reports show a clerical error listing this address as 1039 **Gherry** Valley Rd, Gilford NH 03249, this error is easily noticed when Googling the address and is automatically corrected to Trainor's address on Cherry Valley Rd.

13

Plaintiffs ran their publication. *Id.* at ¶56. Despite this, Plaintiffs did not serve Trainor at the Cherry Valley address while he resided there, nor did they serve him at the address in Moultonborough. Nor did Plaintiffs serve Trainor at the Thorton address listed as M2's principle place of business, attempt to mail service to Trainor at the Thorton addressor or at the very least, attempt to email service to Defendants. *Id.* at ¶41. As such, Trainor had not actual notice of this lawsuit until he received a notice in the mail in August 2024 that Plaintiffs were attempting to domesticate a judgment against Trainor and M2. *Id.* at ¶¶43-44. Without any actual notice, or constructive notice via publication, Trainor could not have been properly served with summons and the judgment against him must be vacated.

### iv. Defendants did not receive notice of this lawsuit until August 2024.

Despite the fact that this matter was filed in November 2021, Defendants did not receive actual notice of the lawsuit until nearly two years later in August 2024. Ex. A ¶¶43-44. Trainor received a letter in the mail from the State Court of New Hampshire on August 1, 2024. *Id.* at ¶44. This letter was received at Trainor's P.O. box listed on the New Hampshire Secretary of State website. *Id.* at ¶¶20-21,44. Trainor maintained the same P.O. box in Gilford, New Hampshire since forming M2 in 2015. *Id.* at ¶¶20-21. Trainor has regularly collected mail from this address for years without any issues with lost mail or packages. *Id.* at ¶¶23-24. In the past, if Trainor was required to collect an item from the post office that was not left directly in his P.O. box, Trainor would receive a note from the post office requesting he pick up the mail from post office personnel. *Id.* at ¶25. Despite Plaintiffs' claims that they attempted to serve Defendants at this address, no such note was left related to any mailing for this case. *Id.* at ¶26. As such, Trainor/M2 were not aware of any attempts at serving them via certified mail. Otherwise, Trainor/M2 would have followed up with post office personnel about potentially missing mail. *Id.* at ¶25. Trainor is the

14

only individual with access to the P.O. box and regularly checks the box. *Id.* at ¶¶27, 31. Had service been properly attempted via certified mail, Trainor/M2 would have been made aware of it. *Id.* at ¶¶41-43. Here, it is clear that the attempts at service via certified mailing were inadequate as Trainor was not given any notice of the attempts nor were the summonses left in his P.O. box for collection.

## CONCLUSION

While other means existed to provide actual notice to Defendants of their lawsuit, Plaintiffs pursued the path of least resistance with an emphasis on their own convenience rather than on informing Defendants of the claims brought against them. As such, with a firm deadline in place to achieve service, Plaintiffs rushed service against the Defendants resulting in a judgment being entered against two parties that did not have actual notice of the proceedings against them. Therefore, Defendants' Federal Rule 60(b)(4) Motion to Vacate the September 29, 2022 Judgment should be granted.

For the reasons set forth in this Motion, Defendants, Mike Trainor and M2 Management, Inc. respectfully requests that this Court vacate the Judgment Order entered against them on September 29, 2022 and for any other relief this Court deems just.

/s/ John C. Ellis
*Attorneys for Defendants*

John C. Ellis
David DeSchepper
Joyce Mendoza Navarro
ELLIS LEGAL, P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 967-7629
jellis@ellislegal.com
ddeschepper@ellislegal.com
jmendozanavarro@ellislegal.com

15

## CERTIFICATE OF SERVICE

      I hereby certify that on this 28th day of May, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which by its operation will send notification to all counsel of record.

      /s/ John C. Ellis