IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| DWIGHT McDONALD, CHRISTOPHER ATKINS and TIMOTHY PROVOST, Each Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs <br> vs. <br><br> M2 MANAGEMENT INC., and MICHAEL P. TRAINOR, <br><br> Defendants | No. 21-cv-6260 |

## **DEFENDANTS' RULE 60(b)(4) MOTION TO VACATE JUDGMENT**

Despite their differences, the parties to this litigation agree on the fact that service by publication is a notably "unreliable" means of service. The central issue before this Court now becomes whether publication in the classifieds section of a newspaper that is not circulated or distributed to Defendants was reasonably calculated to notify Defendants of the lawsuit pending against them in the Northern District of Illinois. It is not, and as such, the judgment against Defendants entered on September 29, 2022 is voidable pursuant to Federal Rule of Civil Procedure 60(b)(4).

Reasonableness of service requires the Court to review all the facts and circumstances surrounding the means of service, Defendants' location, and notice of the same. As argued in Defendants' Motion to Vacate, and set forth in further detail below, Plaintiffs did not validly serve Defendants because service by publication in the Laconia Daily Sun was not reasonably calculated to provide notice, Plaintiffs failed to exhaust reasonable alternatives as required by New Hampshire law before resorting to service by publication, and Defendants' address was readily discoverable and established at the time of publication. As such, Defendants respectfully request this Court grant their Motion.

1

**REPLY ARGUMENT**

**I.     Service via Publication was not Reasonably Calculated to Notify Defendants of this Lawsuit.**

Plaintiffs' Response fails to address that New Hampshire law requires the Court to consider whether Defendants were given a fair notice and an opportunity to be heard as the primary tests for valid service and whether more inexpensive and efficient mechanisms of service were available before attempting service via publication. *See Williams v. Williams*, 121 N.H. 728, 733 (1981); *See also White v. Lee*, 124 N.H. 69, 75 (1983). This is because these fundamental rules of law cannot be contested, and Plaintiffs' position that it afforded fair notice and an opportunity to be heard is not factually supported. Here, Plaintiffs' attempts at service via publication were not reasonably calculated to inform Defendants of the lawsuit pending against them and was utilized in lieu of attempting service at an address readily known to Plaintiffs. In fact, Plaintiffs admit that attempts at service must be desirous of actually informing the absentee. *Mullane v. C. Hanover Bank & Tr. Co*, U.S. 339, 314 (1950); *Plaintiffs' Response p. 5*. The reasonableness and hence the constitutional validity of any chosen method may be defended on the grounds that it is in itself reasonably certain to inform those affected or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to achieve notice than other feasible and customary substitutes. *Id.*

To justify their attempts at service, Plaintiffs rely heavily on the U.S. Supreme Court case of *Mullane v. C. Hanover Bank & Tr. Co.* in support of their argument. This reliance, however, is misplaced. Indeed, the *Mullane* Court itself expressed significant concerns with the notice via publication and expressly cautioned that:

> Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the

2

newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 315 (1950)[1].

The U.S. Supreme Court later clarified their ruling in *Mullane* stating "[t]he general rule that emerge[d] from *Mullane v. C. Hanover Bank & Tr. Co.* is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962)(internal quotation marks omitted). As detailed below, this is such a case.

Plaintiffs also rely on *Hugel v. McNell,* 866 F.2d 1, 5 (1st Cir. 1989), to argue that service via publication was appropriate in this case given Plaintiffs' purported service attempts in the past. This argument is only persuasive if the parties and Court ignore the fact that Plaintiffs were aware of an alternative address for the Defendants in Thornton, New Hampshire. *See Plaintiffs' Exhibit 4.* Plaintiffs' Exhibit 4 also demonstrates that they contemplated service at the address. *Id.* Their Response, however, does not provide any evidence that service was ever attempted at this address. As argued below, had they done so, they would have found the site to contain a mobile office and mailbox.

## II. Plaintiff's service by publication was improper and ineffective.

Plaintiffs do not dispute that Defendants never received actual notice of this lawsuit. Instead, they argue that their publication in the Laconia Daily Sun satisfied statutory requirements.

---

[1] While *Mullane* analyzes notice via publication in the context of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund, the rationale stated by the Court is applicable in this case.

But regardless of whether Plaintiffs strictly complied with New Hampshire Revised Statutes, the fundamental principles of Defendants' due process rights were not met. Even if Defendants facially satisfied the New Hampshire statute on service the primary test for valid service upon a defendant, where under all the circumstances, service is reasonably calculated to afford the interested parties fair notice and an opportunity to be heard. *Williams*, 121 N.H. at 733; *see also Mullane,* 339 U.S. at 314 (Fair notice and an opportunity to be heard is an elementary and fundamental requirement of due process). While Plaintiffs claim that service was sufficient to overcome the weight of legal authority and factual evidence, Plaintiffs only point to New Hampshire statute on service by publication to support their contention that service was proper. However, they neglect to address Defendants' elementary and fundamental requirement of due process. *Mullane*, 339 U.S. at 314. Moreover, they fail to point to any meaningful admissible evidence to support their argument that alternative service was indeed, the "last ditch" effort. As such, service on Defendants was not reasonably calculated to serve Defendants and Plaintiffs failed to meet Defendants' baseline constitutional requirements.

**A. Service by Publication in the Laconia Daily Sun Was Not Reasonably Calculated to Provide Notice.**

Plaintiffs argue that because the Laconia Daily Sun circulated in Gilford—where Trainor's Cherry Road registered business address was located—the publication was sufficient. But under both federal and New Hampshire law, service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" not just a single set of facts. *See Mullane*, 339 U.S. 306 at 314; *Sununu v. Clamshell All.*, 122 N.H. 668, 672 (1982).

First, Plaintiff did not diligently attempt to effect service and thus, did not afford Trainor notice and an opportunity to be heard. At the time Plaintiffs attempted service via publication, M2 maintained its principal address in Thornton. *See Trainor Affidavit,* ¶8. This address was listed on

4

public filings at the time service by publication was attempted and M2 maintained a P.O. Box in Gilford maintained since 2015 as well as a business email address publicly available through the New Hampshire Secretary of State. Despite these more reliable means of identifying Defendants' locations and attempting service via more reliable means, Plaintiffs have only provided admissible proof of one attempt at service on February 21, 2022. The affidavit of non-service, however, is based on a single attempt to serve Trainor. Other alleged attempts are not supported by the record and inadmissible and unverifiable.

Pursuant to Rule 4(l)(1) of the Federal Rules of Federal Procedure, unless service is waived, proof of service <u>must be made</u> to the court. Fed. R. Civ. Pro. 4(l)(1). Except for service by a United States marshal, proof must be by the server's affidavit. *Id.* Here, the remaining "factual evidence" that they set forth to prove that the prior service attempts were made are emails containing inadmissible hearsay that cannot be deemed to constitute proof of non-service and status reports containing no affidavits to verify the truth of Plaintiffs' alleged attempts to serve Defendants. Most importantly, none of these attempts are supported by affidavits of service or at the very least, an affidavit by Plaintiffs' counsel or Plaintiffs' special process servers verifying those attempts. Neither do they offer proof that their certified mail to the P.O. Box was returned or undeliverable. Thus, Plaintiff's invocation of multiple unsuccessful attempts is speculative and unsupported by the record. Defendants, on the other hand, have set forth factual testimony that established that Trainor regularly checked the P.O. box registered for M2 via the New Hampshire Secretary of State. *Trainor Affidavit,* ¶23. This evidence establishes that, had Plaintiffs made multiple attempts at serving Defendants via certified mail at this P.O. box that Defendants, via Trainor, would have received this mail. *Trainor Affidavit,* ¶¶21-30. This sworn testimony further demonstrates that Plaintiffs did not diligently attempt service. As a result of their lack of diligence,

5

their prior attempts evidence that Plaintiffs attempts prior to the Court granting a motion for alternative service were not reasonably calculated to provide Defendants of fair notice and an opportunity to be heard and Plaintiffs' failure to issue proof of those attempts merited denial of the Motion for Alternative Service. Further, these failed attempts at service undermine the reasonableness of Plaintiffs' attempts to serve Defendants via publication.

### B. Plaintiffs Failed to Exhaust Reasonable Alternatives Before Resorting to Publication.

Second, Plaintiffs' service by publication was similarly deficient where he had more apt options that he did not attempt prior to seeking alternative service. Even if publication is permitted under New Hampshire law, it is a last resort. As the New Hampshire Supreme Court has held, "less reliable forms of constructive notice, such as publication or posting, are not reasonable where 'an inexpensive and efficient mechanism such as mail service is available.'" *White*, 124 N.H. at 75. Here, Plaintiffs failed to attempt service at the Thornton business site, a more inexpensive and efficient mechanism than paying to circulate service in a small newspaper that was not reasonably calculated to reach Defendants. In their Response, Plaintiffs' attempt to dismiss the Thorton address as "an empty lot" not yet suitable for notice, but this misrepresents the facts. The Thornton property had a container office and a functioning mailbox on-site prior to May 2022. *See Supplemental Affidavit of Mike Trainor attached as Reply Exhibit A,* ¶¶4-10. The property also included signage advertising for M2 and contained M2's phone number and an invitation to call to make an appointment. *Supplemental Affidavit,* ¶5. This address was in operational use for M2's business activity and mail delivery prior to May 2022. *Supplemental Affidavit,* ¶¶4-10. Moreover, Trainor actively used the site during this period and would have received any properly addressed legal mail sent there. *Supplemental Affidavit,* ¶¶6-10. Additionally, as discussed *supra*, there is no competent evidence—other than the one attempt at service on February 21, 2022—that Defendants attempted or exhausted all other reasonable, inexpensive and efficient methods of service.

6

As it relates to the Gilford address, while Plaintiffs argue that Trainor's failure to update his business filings with the Secretary of State supports that "Plaintiffs attempted service by means that would guarantee actual notice for six months," it is clear that Plaintiffs readily discovered the error in the filing as they state they attempted service at Cherry Road, rather than Gherry Road. Plaintiffs' Response, p. 1. While Plaintiffs claim that Trainor failed to respond to phone calls and emails, no such evidence of these attempts are introduced. For example, evidence of the email alleged to have been sent to Trainor or which email address was attempted. Defendants on the other hand, demonstrate, through an affidavit, that he regularly checked the business email and received no such notice.

Similarly, while Plaintiffs claim that Defendants failed to collect certified mail, they concede that they have no proof that Trainor refused to collect the certified mail and speculate that Trainor responding "immediately" to the notice informing him that actual money was at stake is "telling." Response, p. 9. However, the notice that Trainor received was from the attempted enforcement of the Illinois judgment against him provided by the court in New Hampshire. Plaintiffs are correct that its "telling" he responded to this immediately, however, their reasoning is flawed. Rather, it is telling that Plaintiffs allege that they sent "four certified letters" to the same address that the New Hampshire Court used, but that only the Court's mail went through. This discrepancy begs the question of whether Plaintiffs' efforts "necessitated service" by less reliable means or whether, more likely, Plaintiffs attempts at service failed to reach Defendants. In this case, the simplest explanation is likely the most accurate—had Plaintiffs' certified letters reached Defendants' P.O. box there would be some return mail indicating as much. Here there is not. Instead, Plaintiffs' investigated potential addresses in New York rather than attempting service at the address that was readily available to them in Thorton, NH. These alternative methods at service

at the Thornton address were readily available to Plaintiffs and presented more reliable means of service in lieu of filing a Motion for Alternative Service that attempted to notify Defendants of a lawsuit by posting a half page notice in the Classifieds section of a non-circulating free to print newspaper. Per New Hampshire law, service via publication is not reasonable where inexpensive options of service are available. *White,* 124 N.H. at 75. Here, they were available, but Plaintiffs did not avail themselves of these options.

Third, Plaintiffs' attempt at service by publication was deficient. Service by publication is not valid merely because it is facially permissible under statute; it must still meet constitutional due process requirements. *Williams*, 121 N.H. 728 at 733; *Mullane*, 339 U.S. at 314. Defendants never received the publication notice and were not reasonably likely to. At the time of publication in May 2022, Trainor no longer resided in Gilford—he moved to Moultonborough in May 2021. *Trainor Affidavit,* ¶16. Trainor and M2 did not subscribe to, read, or receive the Laconia Daily Sun, nor did the paper circulate in Thornton—or anywhere. *Trainor Affidavit,* ¶¶45-50. Moreover, as previously testified to Trainor was physically out of state (in Illinois and Pennsylvania) during the publication period. *Trainor Affidavit,* ¶56. While Plaintiffs claim that publication through the Laconia Daily Sun was reasonably believed to affect service, Plaintiffs were aware of the principal address in Thornton and made no attempt to serve there. Thus, even if publication complied with statutory requirements on its face, it failed the standards under *Mullane* and *William.*

## CONCLUSION

For the reasons set forth in Defendants' Motion and this Reply, Defendants, Mike Trainor and M2 Management, Inc. respectfully requests that this Court vacate the Judgment Order entered against them on September 29, 2022 and for any other relief this Court deems just.

/s/ John C. Ellis

*Attorneys for Defendants*

John C. Ellis
David DeSchepper
Joyce Mendoza Navarro
ELLIS LEGAL, P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 967-7629
jellis@ellislegal.com
ddeschepper@ellislegal.com
jmendozanavarro@ellislegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of July, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which by its operation will send notification to all counsel of record.

/s/ David DeSchepper